UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JONATHAN KASSAY,

    Petitioner,

v.      CAUSE NO. 3:20-CR-31 DRL
    3:21-CV-405

UNITED STATES OF AMERICA,

    Respondent.

## OPINION & ORDER

Jonathan Kassay filed a *pro se* petition to vacate his sentence under 28 U.S.C. § 2255. He says his attorney provided ineffective assistance vis-à-vis his plea agreement, pretrial motions, sentencing, and his right to appeal. The court now denies the petition.

## BACKGROUND

On March 31, 2020, the government charged Mr. Kassay with producing child pornography under 18 U.S.C. § 2251(a). An information and signed plea agreement were filed. In the plea agreement, Mr. Kassay admitted to the offense, acknowledged the statutory range of this offense, and agreed to waive his right to appeal and to contest his conviction and sentence, except on the basis of ineffective assistance of counsel.

On June 11, 2020, Mr. Kassay pleaded guilty. The court accepted his plea. Mr. Kassay never moved to withdraw his plea. On October 9, 2020, the court sentenced him to 360 months in prison. Mr. Kassay filed this § 2255 petition. The government opposes his petition.

## STANDARD

In extraordinary situations, the court may vacate, set aside, or correct a prisoner's sentence. 28 U.S.C. § 2255(a); *Hays v. United States*, 397 F.3d 564, 566-567 (7th Cir. 2005). The writ of *habeas corpus* is secured by the United States Constitution: "The Privilege of the Writ of Habeas Corpus shall not

be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Historically, criminal defendants subject to a final conviction were entitled to *habeas* relief only if the court lacked jurisdiction. *See Ex parte Watkins*, 28 U.S. 193, 202 (1830). The writ has since been expanded to provide prisoners relief from various violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2255(a); *Danforth v. Minnesota*, 552 U.S. 264, 272 (2008); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The writ is not a substitute for direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995).

For a § 2255 petition, the court examines the entire record. The court should hold an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief. *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016); *see also* 28 U.S.C. § 2255(b). When the petition and record conclusively show the petitioner isn't entitled to relief, the court needn't hold an evidentiary hearing. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). A petitioner's allegations must be detailed and specific, not "vague, conclusory, or palpably incredible." *Id.* (citation omitted).

DISCUSSION

Mr. Kassay says he is entitled to *habeas corpus* relief for several reasons: his counsel was ineffective before, during, and after plea negotiations, and his counsel neglected to advise him of the advantages and disadvantages of filing an appeal. His petition materially focuses on his plea, suppression motion, sentencing, and appeal right. The government argues that Mr. Kassay waived certain arguments and otherwise has not demonstrated that his counsel's performance fell below the constitutional threshold.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases). To show a violation of this right, a defendant must establish that: (1) his counsel's representation "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993). This same test applies to "challenges to guilty pleas based on ineffective assistance of counsel," though the prejudice prong will be satisfied only when the defendant shows he would not have pleaded guilty and instead proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

    A.    *Knowing and Voluntary Plea.*

To assess counsel's effectiveness at the plea stage, the performance prong remains largely unchanged: the petitioner "must allege that he entered the plea agreement based on advice of counsel that fell below constitutional standards." *Hurlow v. United States*, 726 F.3d 958, 966-67 (7th Cir. 2013). On the prejudice prong, the petitioner must show a reasonable probability that but for counsel's errors, he would not have pleaded guilty. *United States v. Smith*, 989 F.3d 575, 581 (7th Cir. 2021); *see also Hill*, 474 U.S. at 59; *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005).

Mr. Kassay never contends, much less shows, that he would not have pleaded guilty but for his counsel's advice. Instead, he focuses on the plea agreement and its consequences. Contesting the consequences of his plea agreement does not mean that he would have passed over a plea and proceeded to trial instead. *See Cieslowski*, 410 F.3d at 360 ("He does not say, however, that he would not have pleaded guilty but for the erroneous advice."); *cf. Hurlow*, 726 F.3d at 967 (waiver overcome when party demonstrates that he wouldn't have entered into a plea agreement or guilty plea). Because Mr. Kassay has not indicated that his decision to plead guilty was impacted by his attorney's actions, he has not demonstrated prejudice or a need for an evidentiary hearing.

Mr. Kassay argues that his attorney's actions prevented him from entering into a knowing and voluntary plea—specifically with reference to the elements of his offense, the nature of his conduct, and the possible penalties he faced. He says his attorney conveyed the government's plea offer as an option to plead guilty or to proceed to trial—exactly what it was. He says his attorney told him he

3

would receive 180 months as a sentence with the plea agreement. He says his attorney told him he would not seek a "fixed plea"—a plea with a binding sentence.

These alleged errors are "belied by his own [sworn] statements at the change of plea hearing, which are presumed truthful." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). Statements at a plea hearing are made under oath, so the court is "generally justified in discrediting the proffered reasons for the motion . . . and holding the defendant to his admissions at the plea colloquy." *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) (quotations and citation omitted). The court's colloquy can thus "ameliorate the adverse impact of his counsel's misinformation." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (quoting *Moore v. Bryant*, 348 F.3d 238, 243 (7th Cir. 2003)). A court should "not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," looking instead to contemporaneous evidence of the defendant's preferences or intentions. *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Under oath, Mr. Kassay affirmed that he was fully satisfied with his counsel's work [ECF 44 at 8]. He testified that his counsel had done everything that he wanted him to do and also that his counsel had not ignored his wishes in any way [*id.*]. These sworn statements belie his allegations today, including any interest in securing a binding plea through counsel (if the government would even have offered one). *See Lee*, 137 S. Ct. at 1967; *Bridgeman*, 229 F.3d at 592.

Though today Mr. Kassay claims that his counsel created an expectation of a 180-month sentence, he testified at his plea hearing that no one made any promises or predictions to him as to what sentence he might receive [ECF 44 at 26], thereby eliminating any reasonable finding today that he was promised the statutory minimum or that such a promise influenced his decision to plead guilty. Instead, he said he understood that the court could reach a sentence that might not fall within the sentencing guideline range and a sentence he might not expect [*id.* 22, 25-26]. These sworn statements

4

likewise belie his allegations today that counsel made any such prediction or that he pleaded guilty merely because of that expectation. *See Lee*, 137 S. Ct. at 1967; *Bridgeman*, 229 F.3d at 592.

A defendant's incorrect belief as to his sentence alone is insufficient to warrant relief. *United States v. Redmond*, 667 F.3d 863, 872-73 (7th Cir. 2012); *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008); *United States v. Howard*, 341 F.3d 620, 622 (7th Cir. 2003). Though today Mr. Kassay claims that he lacked an appreciation for the enhancements the government might seek to his sentencing guideline range, he testified that his counsel went over the sentencing guidelines with him [ECF 44 at 21-22]. Even his affidavit confirms that counsel discussed the possible enhancements under the sentencing guidelines [ECF 41-2 ¶ 5]. Mr. Kassay said that he understood the statutory penalties for the offense and that he understood that the court did not have to pick a sentence within the guideline range [ECF 44 at 21-22].

Mr. Kassay confirmed that the government's recitation of the material terms of the plea agreement comported with his understanding of the agreement, including the government's recommendation that he be sentenced to the bottom of the guideline range, and that the court was not bound by the government's recommendation [*id.* 13-14]. The court asked Mr. Kassay if there was anything else promised to him not included in the recitation, to which he responded "no" [*id.* 14].

The court emphasizes here the *guideline* range because Mr. Kassay argues that by not recommending the bottom of the *statutory* range, the government breached the plea agreement. This argument is without merit. The statutory range was 15 to 30 years, whereas the sentencing guidelines recommended life until capped by the statutory range of 30 years. The government agreed to recommend the bottom of the applicable guideline range—30 years. The government kept its word. *See Campbell v. Smith*, 770 F.3d 540, 547 (7th Cir. 2014) (when there is "no breach, or if any breach was not material and substantial, defense counsel's failure to object was not ineffective assistance"). In the same light, the court never "varied upward" from the guideline range, as Mr. Kassay suggests, but

5

imposed a sentence squarely as recommended by the sentencing guidelines for all the reasons under 18 U.S.C. § 3553(a).

Mr. Kassay complains that his counsel neglected to explain to him the waiver of his right to a grand jury, but this too conflicts with his sworn statements, quite aside from the court addressing the subject with him extensively. Mr. Kassay affirmed under oath that he had discussed the subject of waiving an indictment by a grand jury with his counsel, that he understood his rights in this regard, that he wanted to waive his right, and that he signed the waiver [ECF 44 at 10-11]. Once more, his petition today advances a position that his prior testimony under oath won't permit.

The court covered the essential elements for the charge of producing child pornography, and Mr. Kassay affirmed he understood what had to be true for him to be guilty of the offense. Mr. Kassay affirmed the factual basis for his plea, including his confession that he used two minors to engage in sexually explicit conduct for the purpose of producing visual depictions and that he then transmitted a certain image from his maintained file to another individual [*id.* 16-18]. The government proffered a description of the photograph. Mr. Kassay seems to think his attorney should have objected to the photograph's description, but Mr. Kassay identified the photograph by file name, confirmed he created it, confirmed he distributed it to another individual, and said he understood it was child pornography [*id.* 17-18]. That left nothing for counsel to dispute, nor would it be proper for counsel to do so when this served as the very factual basis to which Mr. Kassay admitted.

The court holds Mr. Kassay to his admissions during his plea hearing—cloaked as they are with a strong presumption of veracity. *See United States v. Weathington*, 507 F.3d 1068, 1072 (7th Cir. 2007). "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). The court advised him of the consequences of pleading guilty and clearly articulated that a sentence could be longer than he expected. Mr. Kassay's sworn testimony demonstrates that

6

there was no adverse impact from trial counsel's negotiations or advice. Mr. Kassay entered his plea knowingly and voluntarily. *See Hutchings*, 618 F.3d at 699. His contradicting statements today don't warrant *habeas corpus* relief.

>   B.   *Motion to Suppress.*

Mr. Kassay argues that his attorney did not move to suppress evidence from execution of a search warrant that identified an incorrect home address (house number 13858 instead of the correct 13585). He claims that had a motion to suppress been filed, "there is a reasonable probability the negotiation of the plea would have been in our favor" [ECF 41-2 ¶ 13]. He does not explain what a favorable plea negotiation would be, or why that constitutes prejudice; and he fundamentally does not show his attorney's inaction was ineffective.

For a warrant to issue constitutionally, it must be based on probable cause and supported by oath, and it must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This particularity requirement limits "the authorization to search to the specific areas and things for which there is probable cause to search," and in doing so "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *accord United States v. Jones*, 54 F.3d 1285, 1289-90 (7th Cir. 1995). This requirement is satisfied if "the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)); *see also United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) ("An officer could have relied on the remaining guides, without the numeric address, and still found the correct house.").

The court affords counsel "a strong presumption that [his] conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The law generally declines to second-

guess the strategic choices of attorneys. *United States v. Pergler*, 233 F.3d 1005, 1009 (7th Cir. 2000). Attorneys may have a "tactical reason not to make weak arguments." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003), *overruled on other grounds by Lockhart v. United States*, 577 U.S. 347 (2016). Thus "[a] choice not to investigate a particular defense does not constitute deficient performance if [the] lawyer has made a reasonable decision that makes particular investigations unnecessary." *Stevens v. McBride*, 489 F.3d 883, 890 (7th Cir. 2007) (quotation and citation omitted).

The search warrant here allegedly included a transposition or scrivener's error in Mr. Kassay's home address. But this error alone does not suggest constitutional misfeasance, especially when the home could otherwise be identified. *See Steele*, 267 U.S. at 503; *Jones*, 208 F.3d at 608. Though no copy of the warrant was provided to the court, the government argues, and Mr. Kassay does not contest, that the search warrant also included a picture of his home, thereby allowing officers to find the correct location [ECF 47 at 15-16; ECF 47-1 ¶ 6]. Further, the arrest warrant affidavit listed the correct home address and described the process of the search and Mr. Kassay's consent to be interviewed [Cause No. 3:19-MJ-118, ECF 1 ¶¶ 2, 12]. The choice to forgo a motion to suppress wasn't ineffective or prejudicial.

    C.    *Sentencing.*

Mr. Kassay advances several arguments related to his attorney's performance at sentencing. He alleges his attorney did not research the 18 U.S.C. § 3553(a) sentencing factors [ECF 41-2 ¶ 9]; did not explain the impact of the presentence report, his offense level, and the application of the sadistic or masochistic conduct sentencing enhancement [*id.* ¶¶ 24-25, 27]; did not argue in mitigation or inform him that his ex-wife would testify [*id.* ¶¶ 28-29]; did not let him present exculpatory witnesses like his parents or neighbor [*id.* ¶ 30]; and did not contest facts that the government's argument and his ex-wife's testimony elicited [*id.* ¶¶ 32-34, 36].

8

Ever mindful that "the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims [that] relate directly to the negotiation of the waiver," *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999), "garden-variety attacks on his sentence . . . in the guise of a claim of ineffective assistance of counsel, are exactly the sort of claims [Mr. Kassay] knowingly and intelligently waived," *United States v. Joiner*, 183 F.3d 635, 645 (7th Cir. 1999). "[E]ven an ineffective assistance claim cannot survive a waiver unless the claim relates specifically to the voluntariness of the waiver itself." *Bridgeman*, 229 F.3d at 593. The vehicle of an ineffective assistance of counsel claim is thus not available for complaints of counsel's performance at sentencing in so far as they do not relate to the knowing and voluntary waiver of his appellate rights. *Jones*, 167 F.3d at 1145.

Mr. Kassay's arguments related to sentencing also lack merit. He says his trial counsel failed to conduct basic research on the § 3553(a) factors, but never explains what that would have been. These factors are well known to defense counsel, and certainly to the experienced defense counsel who represented Mr. Kassay, so alluding vaguely to "research" isn't a basis for *habeas corpus* relief. In addition, his counsel filed three sentencing memoranda [ECF 21, 22, 28] and also addressed the § 3553(a) factors orally at sentencing. Contrary to Mr. Kassay's allegation, his counsel argued that he had a low risk of recidivating [ECF 21 at 4; ECF 45 at 21-24]. Aside from being waived, his arguments fall short of establishing ineffective assistance or prejudice.

Interpreting Mr. Kassay's petition liberally, to the extent he asserts his sentencing range or a specific enhancement rendered his plea involuntary, he has shown no defectiveness. *Barker v. United States*, 7 F.3d 629, 635 (7th Cir. 1993) ("A lawyer's incorrect estimate of the applicable sentencing enhancements, standing alone, does not constitute ineffective assistance of counsel."). Further, "even if advice from [his] trial attorney had led to his misunderstanding of the consequences of his guilty plea," such as the range he faced or which enhancements would likely apply, "any such confusion was cured by the trial court." *Id.* at 633. His claim stands contra his sworn statements at his plea hearing

9

affirming that no one could say for sure what sentence the court would give and that his sentence could be longer than he might expect [ECF 44 at 22, 25-26].

Within his plea agreement, Mr. Kassay admitted that at least one image involved the use of a minor engaging in sexually explicit conduct, the definition of which included sadistic or masochistic conduct [ECF 2 ¶ 9(b)(2-3)]. The presentence report included a four-level enhancement for sadistic or masochistic conduct based on an image of a victim holding a leash attached to another victim, to which no party objected [ECF 24 ¶ 44; ECF 26]. At sentencing, Mr. Kassay admitted that he read and went over the presentence report in detail with his attorney, which necessarily included an assessment of his sentencing level, the impact of his enhancements, and the corresponding recommended term [ECF 45 at 5]. His after-the-fact assertion that he was blindsided is thus patently contradicted by this sworn testimony and the record.

Furthermore, at sentencing, the court meticulously described the calculation of Mr. Kassay's range, applying the four-level enhancement for sadistic or masochistic conduct, and both parties affirmed the calculation was correct [*id.* at 5-6]. Though he contests the application of this enhancement now, he admits today that one image shows a child's backpack with a tether at the bottom [ECF 41-2 ¶ 25]. *See, e.g.*, *United States v. Wainwright*, 509 F.3d 812, 813 (7th Cir. 2007) (describing bondage as sadistic or masochistic conduct); *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999) (defining sadistic and masochistic conduct). Nevertheless, Mr. Kassay says he should have proof as to why his attorney decided not to contest the enhancement [ECF 41-2 ¶ 25]. It is unclear if the proof Mr. Kassay means would require giving him the pornographic image of his children—something that would not be expected or done—but regardless Mr. Kassay has not demonstrated that his attorney's decision not to contest this enhancement was anything but a reasonable strategic decision, or that it fell below a prevailing professional norm, or that he suffered any prejudice from it. *See Strickland*, 466 U.S. at 687-96; *Pergler*, 233 F.3d at 1009.

Mr. Kassay's remaining arguments relate to mitigation and statements made by the government and the government's witness, which do not touch on the voluntariness of his plea, and are barred by his waiver. *Joiner*, 183 F.3d at 645. They are also without merit. Mr. Kassay's attorney submitted a sentencing memorandum advocating for a sentence of 204 months based on the § 3553(a) sentencing factors [ECF 28]. This memorandum highlighted Mr. Kassay's academic experience, lack of criminal history, family support, the short duration of the conduct, and Mr. Kassay's remorse [*id.*]. At sentencing, his attorney highlighted his distinguished naval career, employment, and contributions to society [ECF 45 at 21-23]. Mr. Kassay made a statement acknowledging his remorse [*id.* 35]. The court received numerous letters from Mr. Kassay's family and likewise considered them, and he makes no proffer as to what his family or neighbor would say outside these letters. He says his counsel never arranged a polygraph to counter the victim impact statement, but Mr. Kassay had the opportunity at sentencing to allocute under oath; and a polygraph would not likely be reliable to gloss this allocution. *See United States v. Lea*, 249 F.3d 632, 639 (7th Cir. 2001). The court decided its sentence accounting for Mr. Kassay's mitigation arguments. He has not shown that counsel was ineffective in argument or in addressing the government's witness or sentencing points, or that he suffered any prejudice.

    D.    *Appellate Rights.*

Mr. Kassay argues that his counsel's performance was constitutionally ineffective because he failed to inform Mr. Kassay of the advantages and the disadvantages of appealing. At least three times, the court confirmed that Mr. Kassay knew that he had waived his right to appeal—by confirming that he had read his plea agreement in which the waiver appeared, and then by covering the subject both at the plea hearing and at sentencing. The government says Mr. Kassay forfeited this argument under his plea agreement, *see Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016) (relying on *Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008)), though recent precedent casts doubt on this argument, *see Garza v. Idaho*, 139 S. Ct. 738, 749 (2019).

11

When an attorney's performance or advice "deprives a defendant of an appeal that he otherwise would have taken," even if an appeal waiver exists, prejudice is presumed. *Id.* at 744. Relief is limited to granting a defendant the opportunity to appeal. *Id.* at 749. Thus, Mr. Kassay need only demonstrate that he would have otherwise appealed his conviction or sentence but for his attorney's constitutionally deficient actions. *See, e.g.*, *id.* at 747 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000)) (defendant affirmatively asked to appeal and attorney did not file notice).

After sentencing, the court advised Mr. Kassay of his appeal rights. He argues that his attorney did not inform him of the advantages and disadvantages of appealing "in any meaningful way;" and, had his attorney discussed this issue with him, there is a "reasonable probability" that he would have appealed because he had "nothing to lose" [ECF 41-1 at 18-19]. He says there is no basis on this record to conclude otherwise [*id.* 19]. At no time has Mr. Kassay established, within *Garza*'s meaning, that he would have appealed or that he even asked counsel to appeal. In a sworn statement, his attorney attested that he discussed the right of appeal with Mr. Kassay and that Mr. Kassay did not ask that he file an appeal on his behalf [ECF 47-1 ¶ 8]. Mr. Kassay does not dispute this evidence. He has not established a basis for *habeas corpus* relief accordingly. *Cf. Garza*, 139 S. Ct. at 750 (attorney not filing an appeal contrary to defendant's express instructions to appeal despite waiver); *Flores-Ortega*, 528 U.S. at 473-75 (same but without appeal waiver).

E.   *Other Claims.*

Finally, Mr. Kassay makes various other vague and unsupported complaints against his counsel. These claims include his attorney's arguments at the detention hearing [ECF 41-2 ¶ 7]; his indictment waiver and a visit from child protective services [*id.* ¶¶ 16, 19]; his attorney's responsiveness and other statements [*id.* ¶¶ 8, 10, 14-15, 22]; discussing alternatives such as volunteering for clinical trials or submitting to chemical castration [*id.* ¶¶ 17-18]; or discussing the possibility of requesting a

12

change of venue [*id.* ¶ 31]. Such claims were waived; and such vague and undeveloped assertions of error don't show ineffective assistance or prejudice. *See Hurlow*, 726 F.3d at 966.

      F.      *Certificate of Appealability.*

All in all, Mr. Kassay thinks he was cheated out of a 15-year sentence. But he was told repeatedly—by his counsel by his own admission, by the government through its recitation of the terms of the agreement, and by the court during his plea hearing—of the sentencing range and the uncertainty of the ultimate sentence. Under oath, he acknowledged these limitations and consequences and nonetheless said he wished to plead guilty. Mr. Kassay's *post hoc* assertions do not overcome these warnings (and presumptions) and his sworn statements of assent. And even if they did, Mr. Kassay has not demonstrated that any of the errors alleged would have impacted his desire to plead guilty or denied him his request to appeal, or that any constitute ineffective assistance of trial counsel.

The record before the court patently belies any such assertion. Mr. Kassay's petition is denied. No hearing is necessary. *See Anderson v. United States*, 981 F.3d 565, 578 (7th Cir. 2020); *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015). Nor is there cause to appoint counsel. *See Winsett v. Washington*, 130 F.3d 269, 281 (7th Cir. 1997); *LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967).

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must also consider whether to grant or deny a certificate of appealability. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). When a petition is dismissed on the merits, the petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on Mr. Kassay's *post hoc* assertions within this petition in ready contrast to the court's repeated warnings and his sworn statements at the plea, and the other evidence before the court, reasonable jurists could not debate the conclusions today. The court thus denies a certificate of appealability.

CONCLUSION

Accordingly, the court DENIES Mr. Kassay's petition to vacate his sentence under 28 U.S.C. § 2255 [ECF 41]. This order terminates the civil case [Cause No. 3:21-CV-405].

SO ORDERED.

June 30, 2022

*s/ Damon R. Leichty*
Judge, United States District Court